IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STEVEN ABNEY, et al., </br> </br>  Plaintiffs, </br> vs. </br> </br> STATE OF ARIZONA, et al., </br> </br>  Defendants. | No. CV 04-525-TUC-RCC (BPV) </br> </br> **REPORT AND RECOMMENDATION** |

Currently pending before this Court is a Motion to Dismiss (Document # 17), pursuant to Rule 12(b), Fed.R.Civ.P., filed by Defendants on February 25, 2005, along with a memorandum of points and authorities. On May 3, 2005, Plaintiffs filed a response. On June 17, 2005, Defendants filed a reply to the Plaintiffs' response. The Court heard oral argument on the motion on July 14, 2005. For reasons which follow, the Magistrate Judge recommends that the District Court, after its independent review, DENY IN PART, GRANT IN PART, and GRANT AN EVIDENTIARY HEARING on Defendants' Motion to Dismiss.

**PROCEDURAL BACKGROUND**

Plaintiffs, seventeen current or previously incarcerated inmates in the Arizona Department of Corrections assigned to work on a dump site near the Fort Grant Prison, filed a complaint on March 23, 2004, in Maricopa County Superior Court. The Complaint alleged eleven claims arising from their work at the dump site, including allegations that Defendants knowingly or negligently exposed Plaintiffs to toxic substances including asbestos and biohazardous wastes. Eight of the claims involved state law claims, two claims raised federal issues alleging violation of the Plaintiffs'

constitutional rights, and one claim alleged punitive damages under both state and federal law.

Defendants removed this action to this Court based on federal question jurisdiction, and the case was transferred to the Tucson Division on September 2, 2004. On October 21, 2004, this case was referred to Magistrate Judge Bernardo P. Velasco for all pretrial proceedings and report and recommendation in accordance with 28 U.S.C. 636(b)(1).

Defendants assert in this Motion to Dismiss that Plaintiffs failed to exhaust their administrative remedies as required under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) and that therefore, pursuant to the Act, their claims must be dismissed.

## STATEMENT OF FACTS[1]

The seventeen Plaintiffs are current or former prisoners of the Arizona Department of Corrections ("ADOC"). In late March to April of 2003, the Plaintiffs were assembled at the Fort Grant Unit of the Arizona State Prison Complex Safford ("Fort Grant"). The Plaintiffs all have experience in construction and were transferred to Fort Grant to do construction-related work. The Plaintiffs allege that while working on the site, they uncovered hazardous materials including asbestos pipes and shingles and red biohazard bags containing medical waste. The Plaintiffs further allege that authorities at the prison, the Defendants, denied the presence of asbestos and instructed them to crush and bury the materials they found.

While working on the site, Plaintiffs complained of the conditions but did not file any grievance on the matter. Plaintiffs allege that they were told that work

---

[1] As discussed below, in an unenumerated 12(b) motion to dismiss, the facts as alleged by plaintiffs are not taken to be true. As such, the statement of facts in this report and recommendation is provided as background for an understanding of the relevance of the present motion, and factual disputes that are relevant to the motion will be discussed further, below.

- 2 -

1  conditions were not grievable, a fact in dispute by Defendants who claim they never
2  advised the Plaintiffs that they could not grieve any condition pertaining to
3  incarceration.
4    In June, 2003, an article was published by the Phoenix New Times, entitled
5  "Outlaw Dumping," that claimed the prison was attempting to make hazardous waste
6  at the Fort Grant dump "disappear" using inmate labor illegally. The article included
7  interviews with some of the Plaintiffs in this case and alluded to asbestos pipe smuggled
8  out of the site by Plaintiff Steven Abney. This article is relevant because Plaintiffs
9  claim that prior to its publication, they had no definite cause of action because they had
10 no outside confirmation of the nature of the materials to which they were allegedly
11 exposed. Two Plaintiffs, including Abney, were released from custody in May, 2003.
12 The Plaintiffs filed their complaint in March, 2004, nine months after the publication
13 of the New Times Article. By this time, a total of eight of the Plaintiffs were no longer
14 in custody.
15    The grievance system available to prisoners is a four-tiered process regulated by
16 ADOC Department Order No. 802. The order lists grievable issues including, among
17 others, conditions of confinement. In order to exhaust available grievance remedies,
18 a prisoner must first submit a letter to his prison counsel (CO III) within ten days
19 following the incident at issue. If not satisfied with the response, the prisoner may file
20 a formal grievance, and continue appealing the results of the grievance up to the
21 Director of ADOC. The Director's response is final and it will serve to exhaust the
22 prisoner's available administrative remedies.

## DISCUSSION

Standard of Review

25    According to the Prison Litigation Reform Act (PLRA), "No action shall be
26 brought with respect to prison conditions under section 1979 of the Revised Statutes of
27 the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in

- 3 -

1 any jail, prison, or other correctional facility until such administrative remedies as are
2 available are exhausted." 42 U.S.C. 1997e(a).  In the Ninth Circuit, the proper pretrial
3 motion for establishing nonexhaustion of administrative remedies under the PLRA is
4 an unenumerated Federal Rules of Civil Procedure, Rule 12(b) motion to dismiss.
5 *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2002).  The defendant must raise this
6 motion as an affirmative defense and the burden is on the defendant to prove
7 nonexhaustion of the remedies by the plaintiff.  *Id*.

8 Defendants' Position

9      Defendants assert that Plaintiffs failed to exhaust or even to make use of
10 available grievance system remedies prior to filing suit.  Defendants point out that
11 failure to exhaust administrative remedies is fatal to such a claim brought by prisoners.
12 Defendants further contend that the PLRA is applicable to the claims in this case
13 brought by former prisoners, citing a recent case in this jurisdiction, *Morgan v.*
14 *Maricopa County*, for support.  259 F.Supp. 985, 992 (D.Ariz. 2003).  Regarding the
15 issue of whether prisoners had no "available" remedies due to the alleged statements of
16 guards that work conditions were not grievable, Defendants contend that this is an issue
17 of fact that should not be considered in a motion to dismiss hearing, but that if it is to
18 be considered as in a summary judgment proceeding, that there should be an evidentiary
19 hearing to resolve this dispute.  In sum, Defendants move that all federal claims be
20 dismissed and the remaining state claims be remanded to state court.

21 Plaintiffs' Position

22      Plaintiffs assert that Defendants have not met their burden of proof as to
23 nonexhaustion of available administrative remedies.  Plaintiffs argue that the PLRA is
24 not applicable to certain Plaintiffs who were not prisoners at the time the suit was filed.
25 Plaintiffs further contend that for those Plaintiffs who were prisoners at the time the suit
26 was filed, there were no administrative remedies available because they were denied
27
28

1 access to the grievance process by prison authorities.  In addition, Plaintiffs point out
2 that the PLRA does not apply to the state law claims included in their complaint.
3 Analysis

### *Does the PLRA exhaustion requirement apply to prisoners released at the time a complaint is filed?*

The PLRA defines "prisoner" to mean "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C.A. § 1997e(h).

While the Ninth Circuit noted that a "broad" reading of the statute would lead to an absurd result, (the definition of "prisoner" would include every person detained in any facility who had *ever* been accused of, convicted of, or sentenced for a criminal offense), it rejected such a broad reading, and looked to a "natural reading" of the text instead. *Page v. Torrey*, 201 F.3d 1136 (9th Cir. 2000).

In *Page*, the Ninth Circuit addressed the issue in a case involving a plaintiff who was civilly committed for care and treatment pursuant to California's Sexually Violent Predators Act. *Page v. Torrey*, 201 F.3d 1136 (9th Cir. 2000).  Noting that the PLRA exhaustion requirements, by their express language, apply only to "prisoners," the Ninth Circuit narrowed the issue to whether or not the plaintiff fell into the category of "[a] prisoner seeking to bring a civil action ..."  The Ninth Circuit held that, to fall within the definition of "prisoner," "the individual in question must be currently detained as a result of accusation, conviction, or sentence for a criminal offense." *Page*, 201 F. 3d at 1139 (citations omitted).

The Ninth Circuit found that although Page was a "prisoner" within the meaning of the PLRA when he served time for his conviction, he ceased being a "prisoner" when he was released from the custody of the Department of Corrections. *Page*, 201 F. 3d at 1140 (citations omitted).

- 5 -

1    While it is true that the issue before the Ninth Circuit in *Page* addressed directly
2 only the issue of civil commitments following a criminal detention, the broad holding
3 in *Page* suggested that the exhaustion requirements of the PLRA would not apply to a
4 plaintiff who had been released from custody at the time a lawsuit is brought.

5    Defendants point to *Morgan v. Maricopa County*, 259 F. Supp.2d 985 (2003),
6 for support for their assertion that all Plaintiffs have failed to exhaust their claim, and
7 that *Page* has been overruled. In *Morgan*, a magistrate in this district found that
8 "[i]nterpreting the PLRA as inapplicable to former prisoner's claims which arose during
9 the prisoner's incarceration if a prisoner waits to file suit, like Morgan did, until a month
10 after his release from custody and over ten month's after the cause of action arose would
11 nullify Congress' intent in passing the PLRA. The absurdity of such an interpretation
12 is reason enough to reject it." *Morgan*, 259 F.Supp.2d at 992.

13    However, the Supreme Court cases relied upon by the magistrate in *Morgan*,
14 while assuredly addressing Congress' intent in passing the PLRA, did not address or
15 consider the present issue, since the plaintiffs in those cases were both inmates in state
16 prisons at the time the actions were filed. *See Booth v. Churner*, 532 U.S. 731, 121
17 S.Ct. 1819 (2001) (holding that the PLRA requires administrative exhaustion even
18 where grievance process does not permit award of money damages and prisoner seeks
19 only money damages, as long as grievance tribunal has authority to take some
20 responsive action), and *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983 (2002) (holding
21 that exhaustion requirement under PLRA for prison conditions claims applied to
22 inmate's claims). Defendants claim that *Page* has been overruled by these cases is a
23 gross misstatement.

24    In fact, since *Booth* and *Porter* were decided, a number of district courts and
25 circuit courts have addressed the issue and found that the touchstone is the status of the
26 plaintiff at the time the complaint is filed. See *Chase v. Peay*, 286 F.Supp.2d 523
27 (D.Md. 2003) (Plaintiff is a "prisoner" for purposes of exhaustion requirements under

- 6 -

the PLRA when plaintiff is incarcerated on the date of filing of complaint, regardless of release while action is pending); *Dixon v. Page*, 291 F.3d 485 (7th Cir. 2002) ("a plaintiff's status as a "prisoner" is to be determined as of the time he brought the lawsuit."); *Ahmed v Dragovich*, 297 F.3d 201 (3rd Cir. 2002) (adopting the view that a prisoner who has been released is not precluded by the PLRA from filing a § 1983 suit for incident concerning prison conditions which occurred prior to his release. " Any other view would ... be inconsistent with the spirit of the PLRA, which was designed to deter frivolous litigations by idle prisoners."); *Kritenbrink v. Crawford*, 313 F.Supp.2d 1043 (D.Nevada 2004) (rejecting policy reasons outlined in *Booth*, *Churner*, and *Morgan*, and holding that plain language of the statute in conjunction with supporting decision, although overly broad, in *Page,* compels conclusion that the exhaustion requirement applies only to persons who, "at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses" citing *Page*, *supra*.) *Nerness v. Johnson*, 401 F.3d 874 (8th Cir. 2005) (PLRA's exhaustion requirement does not apply to plaintiffs who file § 1983 claims after being released from incarceration).

Because the Defendants focus their arguments on the holding in *Morgan* and the policy considerations in *Booth* and *Churner*, this Court does not cite cases decided before *Porter* and *Booth*, but note that prior to those cases every court of appeals to have considered the issue had held that the PLRA does not apply to actions filed by former prisoners. *See Generally Ahmed v. Dragovich*, 297 F.3d 201, n.10 (2002).

### FIRST RECOMMENDATION

This Court recommends that the District Court focus on the status of the plaintiffs at the time that a lawsuit is "brought" in federal court, and deny Defendants' motion to dismiss for failure to exhaust as to the plaintiffs in this case who are former prisoners and who were not incarcerated or detained in any facility at the time of filing

1  suit, as they are not "prisoners" under 42 U.S.C. § 1997e(h) and are not subject to
2  Section 1997e(a)'s exhaustion requirement.

3  ### *Does the PLRA apply to state law claims?*

4  Plaintiffs argue and Defendants concede that the PLRA's exhaustion requirement
5  only applies to the Plaintiffs' federal (not state) law claims.

6  ## SECOND RECOMMENDATION

7  As the magistrate recommends that at least some of the Plaintiffs' federal claims
8  survive under the analysis above, the magistrate further recommends that the District
9  Court deny Defendants motion to dismiss as to the state claims, and retain jurisdiction
10 over all of Plaintiffs' state law claims.

11 ### *Were administrative remedies available to all prisoners?*

12 Section 1997e of the PLRA states:

13 > No action shall be brought with respect to prison conditions under section 1983
14 > of this title, or any other Federal law, by a prisoner confined in any jail, prison,
15 > or other correctional facility until such administrative remedies as are available
>   are exhausted.

16 42 U.S.C.A. § 1997e.

17 Under a plain reading of the statute, in order for remedies to be exhausted, they
18 must first be available. As noted by the Eighth Circuit, "a remedy that prison officials
19 prevent a prisoner from "utiliz[ing]" is not an "available" remedy under § 1997e(a)."
20 *Miller v. Norris* 247 F.3d 736, 740 (8th Cir. 2001) (citations omitted). *See also Mitchell*
21 *v. Horn*, 318 F.3d 523, 529 (3rd Cir. 2003) (dismissal of claim in error where District
22 Court did not consider prisoner's allegations that he was denied grievance forms.), and
23 *Rivera v. Goord*, 253 F.Supp.2d 735 (S.D.N.Y. 2003) (A plaintiff may proceed despite
24 nonexhaustion where he has been led to believe by prison officials that his alleged
25 incident was not a grievance matter and assured that his claims were otherwise
26 investigated). This Court finds that, if Plaintiffs' factual statements are taken to be true,

27
28
- 8 -

1 then Plaintiffs have presented sufficient evidence that there was no available remedy
2 of which they could have availed themselves under § 1997e(a).

3      There is, however, a question of fact as to whether or not the prison officials in
4 this instance prevented plaintiffs from filing a grievance in this matter.  Unlike an
5 enumerated 12(b) motion to dismiss, the allegations of the Plaintiffs in this case are not
6 automatically taken to be true for purposes of the motion.  In deciding a motion to
7 dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the
8 pleadings and decide disputed issues of fact. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th
9 Cir. 2003) (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d
10 365, 369 (9th Cir.1988) (per curiam). This does not, as Defendants contend, mean that
11 the Court chooses to treat the motion as a motion for summary judgment.  In fact, that
12 approach was directly disapproved in *Wyatt*. In *Ritza*, the Ninth Circuit recognized this
13 distinction, noting that factual disputes in matters for summary judgment are to be
14 resolved by a jury, while factual disputes regarding motions to dismiss for matters in
15 abatement may be resolved by the court ... "and that the court has a broad discretion as
16 to the method to be used in resolving the factual dispute." *Ritza*, 837 F.2d at 369 (citing
17 J. Moore, W. Taggert, J. Wicker, *Moore's Federal Practice* ¶ 56.03 at 56-61 (footnotes
18 omitted) (2d ed. 1987).   In *Wyatt*, the Ninth Circuit advised that "if the district court
19 looks beyond the pleadings to a factual record in deciding the motion to dismiss for
20 failure to exhaust–a procedure closely analogous to summary judgment–then the court
21 must assure the [plaintiff] has fair notice of his opportunity to develop a record."

22      In this case, the Defendants have submitted a partial deposition of Jim Bahn, the
23 prison official who allegedly misled the Plaintiffs into believing the issues were non-
24 grievable, and/or denied grievance forms to Plaintiffs who asked for them. Defendants
25 also argue that, under ADOC policy, prison conditions, which are grievable, include
26 work conditions.   However, Defendants, who urge this court not to consider the
27 "unsworn" Declarations of Plaintiffs, submit no proof that Jim Bahn's deposition was

28

- 9 -

under oath, nor that ADOC policy, despite their bald assertions, actually allows for grievance of work conditions.

Plaintiffs have submitted statements given in an interview and signed "under penalty of perjury" that they were told by Jim Bahn, in the presence of another correctional officer, Officer Lackner, that work conditions were not grievable. Plaintiffs have also submitted their own interpretation, contrary to Defendants', that work conditions are not grievable.

### THIRD RECOMMENDATION

In light of the Court's "broad discretion as to the method to be used in resolving the factual dispute" this Court makes the following recommendation. This Court recommends that an evidentiary hearing be held in order to resolve the factual dispute. This Court further recommends that, if the District Court adopts the above recommendation, denying the motion to dismiss as to the prisoners who were out of custody at the time the action was commenced, and denying the motion to dismiss as to the state law claims, then due to the large number of Plaintiffs and their various locations throughout the state and country, and the necessity for the presence of these numerous Plaintiffs at trial, that such evidentiary hearing also be held at the time of trial.  The trial court will benefit from observing the witnesses directly, and from the complete factual record developed for trial.

Pursuant to Title 28 U.S.C. § 636(b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation.  If objections are not timely filed, they may be deemed waived.  If objections are filed, the parties should use the following case number: CIV 04-525-TUC-RCC.

DATED this 4th day of August, 2005.

_____
Bernardo P. Velasco
United States Magistrate Judge