IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STEVEN ABNEY, et al., <br><br> Plaintiffs, <br> vs. <br><br> STATE OF ARIZONA, et al., <br><br> Defendants. | No. CV 04-525-TUC-RCC (BPV) <br><br> **REPORT AND RECOMMENDATION** |

Pending before the court is a Motion for Summary Judgment, filed by Defendants, requesting that the Court dismiss Plaintiffs' Complaint.

On October 21, 2004, this case was referred to United States Magistrate Judge Bernardo P. Velasco for all pretrial proceedings and report and recommendation. On April 10, 2007, Defendants filed a motion for summary judgment (Doc. No. 174), along with supporting statement of facts ("DSOF"). Plaintiff filed a response (Doc. No. 196) and controverting statement of facts ("PSOF" Doc No. 197). Defendant filed a reply (Doc. No. 200) and a supplemental statement of facts ("DSSOF" Doc. No. 201) on July 30, 2007. Oral argument on the motion was heard before Magistrate Judge Velasco on November 1, 2007. For reasons which follow, the Magistrate Judge recommends that the District Court deny Defendants' Motion for Summary Judgment.

**I.     FACTUAL BACKGROUND**

The Arizona Department of Corrections ("ADC") owns a parcel of land approximately 22 acres in size near its Ft. Grant prison that was used by ADC as a landfill, although usage of the site pre-dates ADC's ownership. ("DSOF" ¶ 1). ADC ceased operating the site as a landfill in December 1997, and at that time the State of

1  Arizona ("State") covered the area with five feet of dirt as an interim measure. (DSOF
2  ¶ 2). In April 1998, ADC decided to formerly close the landfill, but when private
3  contractors' bids exceeded the amount allocated to the project, the Arizona Department
4  of Administration ("ADOA") General Services Division – Construction Services
5  decided to use inmate labor to close the landfill. (DSOF ¶ 3, 4). ADOA recruited
6  inmates from around the State based on their experience in operating heavy equipment.
7  (DSOF ¶ 5). Plaintiffs are 17 of the inmates that were selected to work on the project.
8  (Id.).

9  Plaintiffs started removing rock and vegetation by hand in late February or early
10 March of 2003, and after the arrival of heavy equipment in late March, Plaintiffs began
11 grading the property. (DSOF ¶ 7). On either the 27th or 31st of March 2003, Plaintiff
12 Steven Abney claims that he and others uncovered transite pipe while operating heavy
13 equipment at the site. (DSOF ¶ 8; Plaintiffs' Controverting Statement of Fact (PSOF)
14 ¶ 8). Plaintiffs allegedly removed the pipe from the property for testing, and the test
15 results showed that the transite pipe contained asbestos, specifically chrysotile and
16 crocidolite. (PSOF ¶ 8). Plaintiffs' expert asserts that crocidolite is a "very, very
17 dangerous material" and "100 to 500 times more potent than chrysotile ... a very
18 formidable occupational health risk if it was allowed to be dispersed into the air."
19 (PSOF ¶ 8).

20 As Plaintiffs continued to close the landfill, some unknown quantity of transite
21 pipe was recovered. Descriptions of the amount of transite pipe recovered ranged from
22 filling "between a wheelbarrow and a pick-up truck" to "football fields of pipe" that
23 "would have filled fifty 25-ton trucks." (DSOF ¶ 10; PSOF ¶ 10). Defendants claim
24 that personnel from ADC, ADOA, and the Arizona Department of Environmental
25 Quality ("ADEQ") inspected the site and noted in "field notes" that garbage and waste
26 was visible in only two small areas, but Plaintiffs allege garbage and waste materials
27 were seen all over the landfill and move to strike the field note as hearsay. (DSOF ¶ 12;
28

- 2 -

1  PSOF ¶ 12). Some Plaintiffs knew the transite pipe contained asbestos. (DSOF ¶ 13).
2  While Defendants claim great care was exercised to avoid breaking the pipes, Plaintiffs
3  allege that the heavy equipment would routinely break the pipes producing large dust
4  clouds. (DSOF ¶ 14; PSOF ¶ 14). According to Plaintiffs, breaking or crushing pipe
5  containing asbestos releases asbestos into the air. (PSOF ¶ 33). Plaintiffs also allege
6  they were exposed to bio-medical waste that was contained in red bags on the site,
7  however not all Plaintiffs identified the red bags as containing bio-medical waste.
8  (DSOF ¶ 16). Defendants claim that red plastic bags were used to collect refuse from
9  highways beginning in the early 1990s. (DSOF ¶ 17).

10      Because of the concern that inmates might have been exposed to asbestos, the
11 State hired an independent Certified Industrial Hygienist who reported that running
12 over wet transite piping with heavy equipment would not likely produce levels of
13 asbestos that would exceed the current Occupational Safety and Health Administration
14 ("OSHA") Permissible Exposure Limit ("PEL") Threshold Limit Value ("TLV").
15 (DSOF ¶ 18, Ex. Y). Plaintiffs dispute the evidentiary basis of this report. (PSOF ¶
16 18). Additionally, an ADEQ Industrial Hygienist tested the heavy equipment used
17 during the capping of the landfill, including the air filter on one piece of machinery, for
18 traceable amounts of asbestos but failed to find any. (DSOF ¶ 19). Plaintiffs claim this
19 testing is not probative of whether Plaintiffs were actually exposed to asbestos. (PSOF
20 ¶ 19).

21      Plaintiffs have never been diagnosed with an illness attributable to asbestos
22 exposure, but Plaintiffs claim many of them suffer from pulmonary inflammation
23 caused by crocidolite fibers in their lungs that were inhaled while working on the
24 landfill. (DSOF ¶ 20; PSOF ¶ 20). Defendants claim that Plaintiffs' expert testified
25 that the chance of Plaintiffs developing an asbestos-related disease involves relatively
26 small probabilities. (DSOF ¶ 22).

27      Plaintiffs allege that Defendants were in breach of federal regulations called
28

- 3 -

National Emissions Standards for Hazardous Air Pollutants ("NESHAP"), which apply if 260 feet of pipe is disturbed or broken. (PSOF ¶ 24, 25). Plaintiffs also allege that Defendants were in violation of Occupational Safety and Health Administration ("OSHA") regulations, which require safety measures be taken if the airborne concentration of asbestos fibers exceeds 0.1 per cubic centimeter over eight hours exposure or 1.0 per cubic centimeter over 30 minutes exposure. (PSOF ¶ 26).

Defendants note that Plaintiffs' own expert, Lawrence Repsher, M.D., a board certified pulmonologist, offered the following testimony: 1) Not a single Plaintiff is presently suffering from an asbestos related disease; 2) Dr. Repsher is not aware of any medical evidence substantiating that any Plaintiff ever inhaled even a single asbestos fiber; 3) It is possible to inhale asbestos fibers and never get a disease; 4) It is impossible to predict whether any Plaintiff will ever contract an asbestos-related disease, and the chances of this happening involve "relatively small probabilities;" 5) Not a single Plaintiff is presently suffering from a bacterial or viral disease attributable to alleged exposure to bio-medical waste; and 6) The likelihood of any of them ever contracting such a disease is "very modest." (DSOF ¶ 22).

Plaintiffs dispute these contentions, asserting that 1) Plaintiffs have "ongoing inflammation" surrounding the asbestos fibers in their lungs that require medical monitoring and which will put them at an increased risk of developing malignant mesothelioma or bronchogenic cancer; 2) Dr. Repsher testified unequivocally that the Plaintiffs did in fact inhale asbestos, that they were "significantly exposed;" 3) Plaintiffs admit that it is possible to inhale some small level of asbestos and never get mesothelioma, and that some asbestos is naturally in the environment and can be inhaled, however, Plaintiffs inhaled and were significantly exposed to the most dangerous form of asbestos, crocidolite, which is the most toxic; 4) Contrary to the Defendants misquotation, it is the opinion of Dr. Repsher that there is a "probability" that a Plaintiff will get mesothelioma or cancer based on their exposure to crocidolite

1  at the Fort Grant landfill; 5) Plaintiffs admit that they are not suffering from a disease
2  due to the illegal exposure of biomedical waste; and 6) Dr. Repsher testified that it is
3  a "probability" that a Plaintiff will get an asbestos related disease.  (PSOF ¶ 22)

4       Defendants rely on the following testimony from Delno Malzahn, a Certified
5  Industrial Hygienist, retained by Plaintiffs: 1) Plaintiffs hired Mr. Malzahn to opine as
6  to regulatory compliance issues; the basis of his report was his review of regulations;
7  2) Mr. Malzahn will not offer any medical opinions in this case; 3) He spoke to
8  Plaintiffs' counsel about what it would take to quantify the Plaintiffs' exposure to
9  asbestos; 4) Scientific methods for estimating exposure, including soil analysis were
10 discussed, but Mr. Malzahn was not aware of a study that has ever attempted to
11 replicate the situation that the Plaintiffs allege occurred at the Fort Grant landfill, and
12 did no calculations in this case to determine the level of exposure the Plaintiffs
13 allegedly experienced; 5) Mr. Malzahn did not devise an exposure questionnaire to
14 attempt to quantify the Plaintiffs' individual exposures, but instead based his opinions
15 on their deposition testimony alleging exposure.  (DSOF ¶ 23).

16      Plaintiffs offer in response that 1) Mr. Malzahn was hired to offer opinions as
17 stated in his report and at his deposition, including "regulatory compliance issues," and
18 safety issues, laws that Defendants broke, as well as selective enforcement shown by
19 the Defendants; additionally, Mr. Malzahn quantified the exposure to the Plaintiffs and
20 related that exposure to the significance of Federal regulations such as OSHA and
21 NESHAP; 2) Mr. Malzahn will not offer "medical" opinions, rather, he will offer
22 numerous health and safety opinions regarding asbestos and Plaintiffs' exposure
23 thereto; 3) Plaintiffs admit that Plaintiffs attorney spoke with Mr. Malzahn and
24 confirmed that it is not feasible to quantify the Plaintiffs' exposure to asbestos. (PSOF
25 ¶ 23)

- 5 -

## II. DISCUSSION

### A. Standard

Federal Rule of Civil Procedure 56(c) provides that a court may grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A party seeking summary judgment must identify those parts of the record that indicate the absence of a genuine issue of material fact. *Celotex Corp. v. Caltrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  Once the moving party has made this showing, the nonmoving party must designate which specific facts show that there is an issue for trial. *Celotex*, 477 U.S. at 324, *citing* Fed.R.Civ.P. 56(e).  The moving party is held to a strict standard, and any doubts about the existence of a genuine issue of material fact will be resolved against it. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992).

Under Fed.R.Civ.P. 56(e), in response to a properly supported motion for summary judgment, the opposing party "must set forth specific facts showing that there is a genuine issue for trial."  The inquiry performed by the trial court is to determine whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.  For an issue to be "genuine," there must be evidence such that a "reasonable jury" could reach a verdict in favor of the nonmoving party. *Id.* at 248.

As to what may be properly considered a genuine issue of fact, "[w]hen a respondent to a motion for summary judgment submits proper affidavits by individuals with personal knowledge and other cognizable and significantly probative evidence, such that a reasonable juror drawing all inferences in favor of the respondent could

1 return a verdict in the respondent's favor, the judge must treat that fact as genuinely at
2 issue." *U.S. v. Shumway*, 199 F.3d 1093, 1103 (9th Cir.1999). Moreover, "[t]he
3 possibility that other inferences could be drawn that would provide an alternate
4 explanation for the [defendant's] actions does not entitle them to summary judgment."
5 *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1303 (9th
6 Cir.1999).

      **B.    Level of Exposure.**

          1.    Defendants' Position

9 Defendants argue that, as a threshold matter, Plaintiffs' environmental expert,
10 Delno Malzahn, acknowledges that he did not even attempt to quantify the degree to
11 which Plaintiffs were actually exposed to asbestos, and such failure is fatal to Plaintiffs'
12 claims.

          2.    Plaintiffs' Position

14 In this case, Plaintiffs seek redress for violations of their constitutional rights,
15 punitive damages and emotional distress; as to those damages, Plaintiffs maintain, a
16 medical expert is not necessary to establish causation. Furthermore, Plaintiffs have
17 established precise, quantifiable and significant levels of asbestos exposure in violation
18 of both OSHA and NESHAP.

          3.    Analysis

20 Defendants contend that Plaintiffs' failure to quantify the levels of their alleged
21 toxic exposures is fatal to their claims. In support of this contention, Defendants cite
22 *Mitchell v. Gencorp*, 165 F.3d 778 (10th Cir. 1999). In *Mitchell*, the plaintiff, bringing
23 a toxic tort action, failed to establish his level of exposure to toxic chemicals using
24 techniques subject to objective, independent validation in the scientific community. *Id*.
25 at 781. In *Mitchell*, plaintiff had attempted to establish his level of exposure through
26 his own statements describing the number of length of visits he made to the "flammable
27 room" and, second, he attempted to set the level of exposure through an industrial

- 7 -

1 hygienist, who after studying material safety data sheets and pictures showing some
2 chemical spillage, opined that his exposure to defendant's products caused him to
3 develop chronic myelogenous leukemia. *Id*. at 781.

4 The Court of Appeals for the Tenth Circuit held that the plaintiff must
5 demonstrate "'the levels of exposure that are hazardous to human beings generally as
6 well as the plaintiff's actual level of exposure to the defendant's toxic substance before
7 he or she may recover[]'" but that in this instance, the information relied upon by
8 plaintiffs' experts with respect to plaintiffs level of exposure was "'so sadly lacking as
9 to be mere guesswork.'" *Id*. at 781 *(citing Wright v. Willamette Industries*, Inc., 91 F.3d
10 1105, 1106 (8th Cir.1996); *Allen v. Pennsylvania Engineering Corp.*, 102 F.3d 194, 199
11 (5th Cir.1996)).

12 Defendants also cite *Abuan v. General Electric Co.*, 3 F.3d 329, 333 (9th Cir.
13 1993), for the holding that, in cases claiming personal injury from exposure to toxic
14 substances, it is essential that the plaintiff demonstrate that she was, in fact, exposed to
15 harmful levels of such substances.

16 Plaintiffs correctly note that Defendants' reliance on toxic tort caselaw is
17 misplaced. Inmates alleging Eighth Amendment violations based on a failure to prevent
18 harm must demonstrate only that prison officials were deliberately indifferent to their
19 health or safety by subjecting them to a substantial risk of serious harm. *See Farmer v.*
20 *Brennan*, 114 S.Ct. 1970, 1977 (1994); *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir.
21 1995).

22 Prison officials display a deliberate indifference to an inmate's well-being when
23 they consciously disregard an excessive risk of harm to that inmate's health or safety.
24 *See Farmer*, 114 S.Ct. at 1979-80; *Wallis,* 70 F.3d at 1077. The Ninth Circuit has
25 acknowledged that it is uncontroverted that asbestos poses a serious risk to human
26 health. *Wallis*, 70 F.3d at 1076. (*citing* 20 U.S.C. §§ 3601(a)(3), 4011(a)(3) (noting the
27 Congressional finding that medical science has not established any minimum level of
28

- 8 -

1 exposure to asbestos considered safe).

2 Plaintiffs Complaint alleges that Defendants acted with deliberate indifference
3 toward Plaintiffs in that Plaintiffs faced a substantial risk of serious harm and
4 disregarded that risk by failing to take reasonable measures to correct it; and that
5 Plaintiffs complaint states a cause of action for cruel and unusual punishment.
6 (Complaint, Doc. No. 1, ¶ 99-104)

7 Plaintiffs have submitted facts that demonstrates that there is a genuine issue of
8 material fact regarding the following. Plaintiffs testify that there were various amounts
9 of transite pipe uncovered in the landfill. (DSOF ¶ 8, PSOF ¶ 8) The transite pipe
10 contained crocidolite, a potent form of asbestos. (PSOF ¶ 8)  There was also an area
11 containing asbestos shingles that, although initially fenced off, the fence was eventually
12 taken down and inmates bulldozed dirt into the area. (PSOF ¶  6, 62, 94 and 222)
13 Defendants were aware of the pipe, and that it contained asbestos, but covered it up
14 without notifying an appropriate authority who could assess the potential hazard for
15 exposure and determine the appropriate plan for handling and disposing of the asbestos.
16 (PSOF ¶ 56-69, 93) Defendants formed no safety plan for the asbestos other than
17 instructing Plaintiffs to notify their supervisor if they encountered more transite pipe.
18 (PSOF, ex. D, p. 56-62) Defendants knew, or should have known, because of their
19 training, that the pipe contained asbestos, that health and safety protocols were required,
20 and that persons who worked with asbestos should be protected. (PSOF ¶ 84,85, 88
21 Mr. Malzahn's opinion, based upon a review of the documentation, is that there actually
22 were asbestos fibers released at the site.  (PSOF, Ex. L, p. 109) Based on studies
23 regarding asbestos dust created by breaking pipe, Mr. Malzahn testified that the
24 activities described by Plaintiffs, which created a dust cloud from the crushing of pipe,
25 would be well in excess of OSHA standards. (PSOF ¶ 279)

26 The standards in the cases Defendants cite do not apply to Eighth Amendment
27 deliberate indifference or cruel and unusual punishment cases and do not therefore

28
- 9 -

1 undermine the legal basis of Plaintiffs' case. However, an examination of these facts
2 are more than sufficient, under *Wallis*, *supra*, to establish a genuine issue of material
3 fact adequate to defeat Defendants' motion. Accordingly, the Magistrate Judge
4 recommends that the Defendants' motion for summary judgment be denied on this
5 issue.

### C. Prisoner Litigation Reform Act.

#### 1. Defendants' Position

Defendants assert that Plaintiffs own medical expert, Dr. Repsher, concedes that not a single Plaintiff is presently suffering from an asbestos-related or bacterial/viral disease attributable to his work in the Ft. Grant landfill, and, where plaintiffs are not presently suffering from a disease or illness proximately caused by the alleged exposure, recovery is denied.

#### 2. Plaintiffs' Position

Plaintiffs assert that they are suffering from an injury: an inflammation in their lungs, and a "probability" that a Plaintiff will suffer an asbestos related disease from this exposure. Regardless, Plaintiff would be allowed, pursuant to 42 U.S.C. § 1983, to prove a violation of their Constitutional rights in the absence of any physical injury.

#### 3. Analysis

The Prison Litigation Reform Act expressly prohibits recovery for mental or emotional injury suffered while in custody without a prior showing of physical injury. *See* 42 U.S.C. § 1997e(c).

Although Plaintiffs allege that this Court found that the PLRA did not apply to Plaintiffs, this was in the context of administrative exhaustion. The Court has not considered whether the PLRA applies to all Plaintiffs; those who were incarcerated at the time the lawsuit was filed and those who were released. The Court now finds, however, that the PLRA, "designed to deter frivolous litigations by *idle* prisoners," does not apply to the Plaintiffs who were released at the time this action was filed. *Ahmed*

- 10 -

*v. Dragovich*, 297 F.3d 201, 210 (3rd Cir. 2002) (emphasis added).

As to the Plaintiffs who were incarcerated at the time the lawsuit was filed, the PLRA applies.

Plaintiffs' Complaint seeks compensatory and punitive damages. (Doc. No. 1, ¶ 104 (A) and (B)) Additionally, Plaintiffs' Complaint is consistent with a claim for nominal damages even though not expressly requested. To the extent that Plaintiffs have actionable claims for compensatory, nominal or punitive damages – premised on violations of their Eight Amendment rights, and not on any alleged mental or emotional injuries – the claims are not barred by § 1997(e). *Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002) (PLRA requires a showing of more than *de minimis* injury in order to recover compensatory damages for mental or emotional injury, however, § 1997e(e) applies only to claims for mental and emotional injury, to the extent that claims for compensatory, nominal or punitive damages are premised on constitutional violations, and not on emotional or mental distress suffered as a result of those violations, § 1997(e)(E) is inapplicable and those claims are not barred). Because Plaintiffs claims are premised on a constitutional violation, Plaintiffs may go forward without a showing of physical injury.

Accordingly, the Magistrate Judge recommends that the Defendants' motion for summary judgment be denied on this issue.

Alternatively, to the extent the District Judge finds that a showing of physical injury is required to defeat Defendants motion for summary judgment under this section of the PLRA, the Magistrate Judge recommends, as shown below in subsection D, that the District Judge find that a genuine issue of material fact exists to preclude summary judgment on this issue as well.

**D.    A.R.S. § 31-201.01(L)**

1.    <u>Defendants' Position</u>

Defendants cite A.R.S. § 31-201.01(L) as expressly precluding all of Plaintiffs

state law claims against governmental entities and employees because Plaintiffs have not suffered "serious physical injury."

Arizona Revised Statute § 31-201.01 (L) states:

> A person who is convicted of a felony offense and who is incarcerated while awaiting sentence or while serving a sentence imposed by a court of law may not bring a cause of action seeking damages or equitable relief from the state or its political subdivisions, agencies, officers or employees for injuries suffered while in the custody of the state or its political subdivisions or agencies unless the complaint alleges specific facts from which the court may conclude that the plaintiff suffered serious physical injury or the claim is authorized by a federal statute

A.R.S. § 31-201.01(L).

First, this statute does not apply to those Plaintiffs who were released at the time the lawsuit was filed. As to the remaining Plaintiffs who were incarcerated at the time the lawsuit was filed, Plaintiffs expert Dr. Repshar testified that, to a high degree of probability, all of the Plaintiffs have asbestos fibers in their lungs attributable to their work in the Fort Grant landfill, (DSOF, Ex DD, p.104), and were at an increased risk for cancer and mesothelioma, (DSOF, Ex DD, p.81), although Dr. Repshar could not quantify the amount of fibers in their lungs, and did not know if any plaintiff would actually get an asbestos-related disease (DSOF, Ex DD, p.109-110). Dr. Repshar was of the opinion that the Plaintiffs were injured, and described the injury as an "ongoing inflammation or surrounding of the crocidolite fibers" that were, in his opinion, "almost to a certainty, in their lungs." (DSOF, Ex DD, p.110) While it is possible that Plaintiffs might remain symptomless their entire lives, the recommended treatment for the ongoing inflammation is medical monitoring. (DSOF, Ex DD, p.110-112)

Dr. Repshar's testimony establishes a genuine issue of material fact as to the requisite physical injury necessary to satisfy A.R.S. § 31-201.01(L). Accordingly, the Magistrate Judge recommends that the Defendants' motion for summary judgment be denied on this issue.

### III. RECOMMENDATION

For the foregoing reasons, it is the recommendation of the Magistrate Judge that the District Judge, after his independent review and consideration, enter an Order **DENYING** Defendants' Motion for Summary Judgment (Doc. No. 174).

Pursuant to Title 28 U.S.C. § 636(b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation. A party may respond to another party's objections within ten days after being served with a copy thereof. Fed.R.Civ.P. 72(b). If objections are filed, the parties should use the following case number: **CV 04-525-TUC-RCC.**

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

DATED this 7th day of March, 2008.

_____
Bernardo P. Velasco
United States Magistrate Judge